**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Frederick J. Vasquez, | No. CV 06-2713-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| Michael J. Astrue, Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge (ALJ)/Commissioner's denial of Plaintiff's request for social security disability benefits. This appeal has been briefed by cross-motions for summary judgment, which are now ready for the Court's consideration.

**I.     Background**

Plaintiff applied for social security disability benefits based both on a physical disability and a mental disability. Plaintiff was denied benefits. Defendant does not dispute that the appeal is properly before this Court. Plaintiff now seeks remand for an award of benefits. Defendant argues that the decision of the ALJ/Commissioner denying benefits should be affirmed, but, alternatively, if this Court does not affirm, that any remand should be for further development of the record and not for an award of benefits.

**II.    Discussion**

Generally, this Court should not set aside a denial of benefits unless the ALJ's denial was based on legal error or if the ALJ's findings of fact are not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Id.*; *see also Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Reddick*, 157 F.3d at 720.

In determining whether there is substantial evidence to support a decision, this Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. *Id.* If there is sufficient evidence to support the ALJ's determination, the Court cannot substitute its own determination. *See Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990); *see also Bayliss*, 427 F.3d at 1214 n.1 ("If the record would support more than one rational interpretation, we defer to the ALJ's decision."). Additionally, the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before this Court, substantial evidence supports the ALJ's decision, this Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g).

Under the Social Security Act, a "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A). An individual is determined to be under a disability if, "...his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." 42 U.S.C. § 423 (d)(2)(A);

1  *Reddick*, 157 F.3d at 721.  If the claimant shows that he or she is unable to perform past
2  relevant work, the burden shifts to the Commissioner to show that the claimant "...can
3  perform other substantial gainful work that exists in the national economy." *Reddick*, 157
4  F.3d at 721.

5        The ALJ determines an applicant's eligibility for benefits by deciding the applicant's
6  status with respect to each of the following steps in the sequential evaluation process:

7      1.    is the applicant currently engaged in "substantial gainful activity;"

8      2.    does the applicant have a "medically severe impairment or combination of
9          impairments;"

10     3.    does the applicant's impairment equal one of a number of listed impairments
11         that the Commissioner acknowledged as so severe as to preclude the applicant
12         from engaging in substantial gainful activity;[1]

13     4.    if the applicant's impairment does not equal one of the "listed impairments,"
14         is the applicant capable of performing his or her past relevant work;

15     5.    if the applicant is not capable of performing his or her past relevant work, is
16         the applicant able to perform other work in the national economy considering
17         his or her age, education, and work experience.

18 *See Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).
19 As stated above, in analyzing step five, the burden shifts to the Commissioner.  In this case,
20 Plaintiff claims that errors occurred at both step 3 and step 5.

21                 **A.    Alleged Mental Impairment**

22                       **1.    Listed Impairment 12.08**

23       In arguing that the ALJ erred at step 3, Plaintiff claims that he meet the severity
24 requirements of an impairment listed in Listing 12.08.  Listing 12.08 deals exclusively with

---

[1] If step 3 is answered affirmatively, that the applicant meets or equals the severity requirements of a listed impairment, then the applicant is conclusively deemed to be disabled and the sequential evaluation process ends.  20 C.F.R. § 404.1520(a) and (d).

- 3 -

psychological impairments, therefore, Plaintiff makes no claim of error with regard to his alleged physical disability at step 3.

The Listing of 12.08 states:

*Personality Disorders*: A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment in social or occupational functioning or subjective distress. Characteristic features are typical of the individual's long-term functioning and are not limited to discrete episodes of illness.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Deeply ingrained, maladaptive patterns of behavior associated with one of the following:
   1. Seclusiveness or autistic thinking; or
   2. Pathologically inappropriate suspiciousness or hostility; or
   3. Oddities of thought, perception, speech or behavior; or
   4. Persistent disturbances of mood or affect; or
   5. Pathological dependence, passivity, or aggressivity; or
   6. Intense and unstable interpersonal relationships and impulsive and damaging behavior;

AND

B. Resulting in at least two of the following:
   1. Marked restriction of activities of daily living; or
   2. Marked difficulties in maintaining social functioning; or
   3. Marked difficulties in maintaining concentration, persistence, or pace; or
   4. Repeated episodes of decompensation, each of extended duration.

Doc. #25-2, page 11-12.

Plaintiff argues that he meets 3 of the behaviors listed in Section A (specifically, 2 - pathologically inappropriate suspiciousness or hostility, 4 - persistent disturbances of mood or affect, and 5 - pathological dependence, passivity, or aggressiveness). Plaintiff then argues that he meets 3 of the results listed in Section B (specifically, 2 - maintaining social functioning, 3 - maintaining concentration, persistence or pace, and 4 - repeated episodes of decompensation).

In his motion and reply, Plaintiff does not break down his argument between Sections A and B. Instead, Plaintiff argues that, as a whole, the ALJ's decision in concluding Plaintiff did not meet the listed requirements was not detailed enough. Doc. #25 at 4.

- 4 -

### a. Detail Within ALJ's Opinion

Plaintiff argues that, "The failure to set forth a detailed analysis is legal error. *Marcia v. Sullivan,* 900 F.2d 172, 174 [*sic* 176-77] (9th Cir. 1990)." Doc. #25 at 4. The Defendant responds and first argues that the ALJ is not required, "as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." Doc. #26 at 3 (quoting *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990)). In *Gonzalez*, the Court of Appeals concluded, "the [ALJ's] four page 'evaluation of the evidence' is an adequate statement of the 'foundations on which the ultimate factual conclusions are based. To require the ALJs to improve their literary skills in this instance would unduly burden the social security disability process.'" 914 F.2d at 1201 (citations omitted). Against this background of what the Defendant argues is required of the ALJ, the Defendant concludes that the ALJ's summary of the medical evidence and testimony provided sufficient foundation to justify the ALJ's finding that Plaintiff did not meet the listing of impairments.

After recounting the factual history,[2] the ALJ spent four paragraphs discussing Plaintiff's mental condition. Record at 30. The Court agrees with the Defendant that despite the fact that the ALJ did not specifically address each of the listed requirements and compare them to each of Plaintiff's symptoms, the ALJ's evaluation was adequate to explain the basis for the ALJ's decision. Specifically, the ALJ found that Plaintiff did not decompensate during the hearing (which might be expected of someone with a severe generalized anxiety disorder), that although general anxiety is mentioned it was not described in detail, and that Plaintiff's personality traits "were not symptoms" but were simply his personality. Record at 31. Thus, while in his motion for summary judgment Plaintiff argues that the ALJ found

---

[2] The factual history includes at least eight paragraphs dedicated to the ALJ's review of the evidence related to Plaintiff's claim of a mental disorder. *See* pages 27-29 of the certified record on appeal, Doc. #17(A) of the record before this Court, hereinafter Record at ___, which will reference the page number within the record as a whole and not each individual document therein..

1  he could not work with others, in fact the ALJ found, "from the record as a whole that
2  claimant's personality traits, which are not symptoms but inherent features of his being,
3  engender discord such that he should be separated from work activities involving the
4  presence of others to a maximum degree. In that way, the likely source of anxiety [*sic*] of
5  claimant's anxiety is eliminated or reduced to the maximum degree possible." *Id.*

6  This Court concludes that the ALJ found that Plaintiff does not have a mental disorder
7  which causes him to be disabled under the listed impairments, but instead has a narcissistic
8  personality which is not a symptom of a mental disorder and instead is particular to this
9  Plaintiff. Record at 30. Therefore, the Court finds that the ALJ made particularized findings
10 sufficient to support her decision as to why Plaintiff was not entitled to benefits for a mental
11 disorder.

### b.     Does Plaintiff Meet the Requirements of 12.08?

13 Further, for the detailed factual reasons found by the ALJ, the Court disagrees with
14 Plaintiff's argument that, as a matter of law, he meets the Section 12.08 criteria for being
15 entitled to benefits. Record at 30-31. As discussed above, on the record before the ALJ,
16 Plaintiff failed to meet his burden of showing he met the listed criteria. In his argument on
17 summary judgment, Plaintiff concludes by saying that "It appears that the conclusion of non-
18 disability is in conflict with the ALJ's factual findings." Doc. #25 at 5. This Court disagrees.
19 In assessing the Plaintiff's personality, the ALJ specifically found that Plaintiff's narcissistic
20 personality was not a mental disorder, but simple a personality trait that made it difficult for
21 Plaintiff work with other people. Record at 31. Then the ALJ adopted the hypothetical to
22 the vocational expert of a job for Plaintiff where Plaintiff would have little or no contact with
23 other people to compensate for Plaintiff's personality and the extent to which Plaintiff's own
24 personality gives him anxiety. Record at 31 and 33. Based on these findings, which the
25 Court finds are supported by substantial evidence in the record, the Court affirms the ALJ's
26 decision that Plaintiff is not entitled to benefits based on Section 12.08 of the listed
27 impairments. *See* Record at 34, #3.

- 6 -

### i. Treating Source Opinions

Plaintiff continues to dispute this conclusion by arguing that the ALJ failed to give sufficient weight to the opinion of Plaintiff's "psychiatric team" at the Jewish Family Community Center, who Plaintiff alleges found him to be "seriously mentally ill." Doc. #31 at 4.[3] The Defendant disputes whether these opinions are entitled to any weight, much less special weight as those of a treating physician, because these were opinions of nurse practitioners. Doc. #26 at 4 (citing 20 C.F.R. § 404.1513(a), (d); 20 C.F.R. § 404.1527(a)(2)). This Court agrees with the Defendant that, based on the regulations, the ALJ was not required to give specific and legitimate reasons for not crediting nurse practitioners' opinions. *See* Doc. #31, wherein Plaintiff argues specific and ligament [*sic*] reasons are required for not crediting these opinions.

Moreover, the ALJ's recounting shows the ALJ considered the evidence provided by the "psychiatric team" from the Jewish Family Community Center and found that those diagnoses did not result in Plaintiff being entitled to benefits. For example, the ALJ notes that at several points in the treatment history, the medical personnel indicated that Plaintiff would benefit from medication and behavior modification strategies and Plaintiff rejected both suggestions. Record at 28-29. The ALJ found that these reactions were consistent with narcissistic personality traits, rather that a mental disorder that would entitle Plaintiff to benefits. Record at 29. Thus, the ALJ gave specific reasons for rejecting a "seriously mentally ill" diagnosis in favor of a narcissistic personality traits diagnosis. Record at 29. The ALJ's conclusion is supported by substantial evidence in the record, because Plaintiff's own medical advisors also found narcissistic personality disorder traits on September 30,

---

[3] Plaintiff makes several arguments regarding the alleged errors at Step 5 of the sequential evaluation process, including the ALJ not crediting certain medical evidence.

- 7 -

2005. Record at 29.[4] *See also Matney on behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (finding that inconsistencies and ambiguities within the treating sources' own opinion was a specific and legitimate reason for rejecting the opinion). Thus, there is substantial evidence both in the record and recounted in the ALJ's opinion to support a finding narcissistic personality traits and not serious mental illness based on Plaintiff's doctors opinions coupled with Plaintiff's refusal to take medication (or at least certain medications) or modify his behavior to improve his situation. Record at 28-29. Therefore, the Court does not find the ALJ's treatment of the treating source opinions to be a basis for reversing the ALJ's finding the Plaintiff does not meet the listed impairments definition under 12.08.

### 2.   **Effect of Narcissistic Personality Traits**

Finally, Plaintiff advocates that his narcissistic traits are severe enough to prevent him from working. Doc. #25 at 7-8 (arguing that the ALJ's findings of Plaintiff needing to be separated from work activities involving the presence of others, Plaintiff having no public contact, limited co-worker contact and structured supervision equate to Plaintiff being unable to work at all). The vocational expert disagreed and concluded that these limitations defined the scope of work that Plaintiff could perform, but identified several jobs that would meet these limitations. Record at 33. Plaintiff advocates that the Social Security Regulation 85-15 and the cases of *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987) and *Allen v. Barnhart*, 417 F.3d 396, 406 (3rd Cir. 2005) require this Court to reject the vocational expert's opinion in this regard.

---

[4] Consistent with these findings, the notes also indicate that Plaintiff had good eye contact, his speech quality was verbose and had normal amplitude, he was talkative but redirectable, his thought processes were logical and concrete as were his associations, his stream of thought was unremarkable, he had no delusions or hallucinations, his fund of knowledge and memory were good and his concentration was fair. Record at 29. (The Court has only recounted the portions of the observations relevant to explaining the ALJ's findings.)

- 8 -

SSR 85-15 states that "a finding of disability can be appropriate for an individual who has a severe mental impairment which does not meet or equal the Listing of Impairments, even where he or she does not have adversities in age, education, or work experience." Plaintiff goes on to argue that he falls within Example 1, which states:

> Example 1: A person whose vocational factors of age, education, and work experience would ordinarily be considered favorable (i.e., very young age, university education, and highly skilled work experience) would have a severely limited occupational base if he or she has a mental impairment which causes a substantial loss of ability to respond appropriately to supervision, coworkers, and usual work situations. A finding of disability would be appropriate.

SSR 85-15.

In this case, the issue turns on whether Plaintiff's issues stem from a "mental impairment" as required in the example, versus Plaintiff simply choosing to keep his personality by refusing behavior modifications and some medications, as was essentially found by the ALJ. Record at 30-31. As discussed above, if there is substantial evidence to support the ALJ's decision, this Court must affirm that decision and cannot substitute its own judgment. *Young*, 911 F.2d at 184; *see also Bayliss*, 427 F.3d at 1214 n.1 On this record, the Court finds there was substantial evidence to support the ALJ's finding.

Specifically, in the detailed recounting of the medical history, the ALJ found that Plaintiff's own medical consultants at Southwest Behavioral Services identified that, Plaintiff, "made choices about information provided to him about his treatment," and that "He disagreed about medications prescribed to treat his symptoms [depression and anxiety] and eventually requested a transfer to Jewish Family Services." Record at 28. This evidence supports the ALJ's conclusion that Plaintiff did not have a "mental impairment" but instead had inherent personality features that he understood and chose not to change. Further, Plaintiff's medical consultants suggested behavior modification strategies and "[Plaintiff] opposed the suggestion." Record at 28. Again, this evidence supports the ALJ's conclusion that Plaintiff did not have a "mental impairment" that prevented work, but a personality that requires certain work place limitations. Finally, the ALJ's conclusions were supported by

the ALJ's own observations of Plaintiff at the hearing. ("The claimant functioned adequately during the stress of examination at the hearing held on April 12, 2006. He did not decompensate as might be expected of a person with a severe generalized anxiety disorder." Record at 31). Accordingly, the Court finds substantial evidence in the record to support the ALJ's decision.

Moreover, consistent with SSR 85-15, the ALJ credited all of these limitations in his hypothetical to the vocational expert. *See* SSR 85-15 ("If a person has a severe medically determinable impairment which, though not meeting or equaling the criteria in the Listing of Impairments, prevents the person from doing past relevant work, it must be determined whether the person can do other work. This involves consideration of the person's RFC [Residual Functional Capacity] and the vocational factors of age, education, and work experience."). The vocational expert, based on the relevant RFC limitations, identified several jobs existing in the community that Plaintiff could perform. The ALJ relied on this testimony to find Plaintiff could work. Therefore, the ALJ complied with SSR 85-15 by considering Plaintiff's RFC in light of his personality limitations, even though Plaintiff did not meet a listed impairment. Further, because this Court finds that the ALJ complied with SSR 85-15, the Court finds that *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987) and *Allen v. Barnhart*, 417 F.3d 396, 406 (3rd Cir. 2005) are distinguishable on that basis. Thus, the Court will not reverse the ALJ's decision on this basis.

### B.     Alleged Physical Impairment

In addition to his personality issues, Plaintiff also claims that he is disabled due to a physical impairment. Specifically, Plaintiff claims that he has fibromyalgia and that this condition, "precludes the performance of sustained full time work." Doc. #25 at 13. Plaintiff claims that the ALJ erred in not finding him disabled based on his physical disability because the ALJ failed to give proper weight to the opinion of a treating physician and the ALJ failed to give proper weight to Plaintiff's subjective complaints of pain.

### 1.     **Treating Physician**

Generally, an ALJ must give a treating physician's opinion greater weight than other opinions unless the ALJ gives specific and legitimate reasons for failing to give the treating physician's opinion greater weight. *See Rollins v. Massanari*, 261 F.3d 835, 856 (9th Cir 2001) (finding that an opinion from a treating physician may be rejected for specific and legitimate reasons). However, although the treating physician's opinion is entitled to greater weight, "[t]he opinion of a treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r*, 169 F.3d 595, 600-601 (9th Cir. 1999). The more evidence presented by the physician in the form of signs or laboratory findings, the more weight and credence the ALJ will give to the opinion. 20 C.F.R. § 404.1527(d)(3).

In this case, Plaintiff argues that the ALJ erred in not crediting Dr. Bhalla's opinion that Plaintiff has fibromyalgia and that the fibromyalgia prevents Plaintiff from working. The ALJ detailed why she did not credit Dr. Bhalla's opinion in full. First, the ALJ noted that Dr. Bhalla's findings were not supported by objective clinical or medical tests, but were instead based on Plaintiff's subjective complaints. Record at 31; *see Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (the ALJ can choose to not rely on a treating physician's opinion that is based solely on Plaintiff's subjective complaints and not on objective medical data).

Second, the ALJ stated that she would not give controlling weight to the treating physician's opinion in this case because the diagnosis was, "non-detailed conclusions characterized by check marks in a box, enumeration of diagnoses and listing, without explanation or description of severity of symptoms." Record at 32; *see Batson v. Comm'r*, 359 F.3d 1190, 1194-95 (9th Cir. 2004) (treating physician's opinion is only entitled to minimal weight when it is conclusory, it is in the form of a checklist, it is not supported by objective evidence, and it is based on subjective complaints and not objective medical evidence).

- 11 -

1    Finally, the ALJ gave a third basis for not giving controlling weight to the treating
2 physician's opinion; namely, that the opinion was inconsistent with the opinion of the
3 consultative examiner, Dr. Young. Record at 31-32. Specifically, the treating physician, Dr.
4 Bhalla, opined that Plaintiff has the capacity,

> "to sit more than on hour out of 8 but less than two, to stand less than one hour out of eight and walk less than one hour out of eight and the ability to lift and carry less than ten pounds."

Record at 31.

However, the consultative examiner found that Plaintiff daily routine includes,

> "getting up between 5:00 a.m. and 6:00 a.m., stretching, going for a morning walk, taking his medications, helping with child care all day, including feeding the baby, assisting his son with showering, taking out the garbage and napping for about one and a half hours daily. Activities also included reading the Bible and laying around [the] house. He helped make dinner. Afterwards he watched TV, played board games with the children and wife or on the computer. He attends church. Both he and his wife pay bills together. He helps with the laundry, dishes and cooking. He also drives."

Record at 27.

The ALJ then noted that,

> "The far less than sedentary residual functional capacity assigned by Dr. Bhalla is of a level one would expect to see associated with conditions of major traumatic injury or a condition well documented by testing...however, the record as described above, especially the consultative report, demonstrates that with treatment the claimant maintains what clearly appears to be a normal daily routine with a wide array of ordinary household chores, duties and responsibilities."

Record at 32. Thus, for this third reason, that other medical evidence in the record contradicted Dr. Bhalla's opinion, the ALJ did not give controlling weight to Dr. Bhalla's opinion. *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (treating physician's opinion can be discounted based on the results and findings of an independent consultative examination).

This Court is not charged with reviewing the evidence and makings its own judgment as to whether Dr. Bhalla's opinion should be given controlling weight when there is sufficient evidence to support the ALJ's decision. *See Young v. Sullivan*, 911 F.2d 180, 184

- 12 -

1  (9th Cir. 1990). Additionally, the ALJ is responsible for resolving conflicts in medical
2  testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53
3  F.3d 1035, 1039 (9th Cir. 1995). Thus, this Court must only determine whether the ALJ gave
4  specific and legitimate reasons for not giving Dr. Bhalla's opinion controlling weight. This
5  Court finds that the three reasons detailed by the ALJ and recounted above are specific and
6  legitimate reasons for not giving Dr. Bhalla's opinion controlling weight and this Court will
7  not reverse the ALJ's finding of no disability based on Plaintiff's claim that Dr. Bhalla's
8  opinion is entitled to controlling weight.

### 2. **Plaintiff's Subjective Complaints of Pain**

Plaintiff further claims that this Court should reverse the ALJ's denial of benefits because the ALJ failed to properly weigh Plaintiff's subjective complaint testimony. Doc. #25 at 15. In deciding whether to accept subjective complaints, the ALJ must perform the analysis adopted in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986), as a threshold matter. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under *Cotton*, the claimant who bases disability on subjective complaints must: (1) produce objective medical evidence of an underlying impairment (but not of the pain or fatigue), and (2) must show that the impairment or combination of impairments reasonably could "produce some degree of symptom." *Id*. at 1281-82. The latter prong of the test does not require evidence of a causal relationship between the medically determinable impairment and the alleged symptom or that the impairment could reasonably be expected to produce the severity of symptom alleged. *Id*. at 1282. "If the claimant produces evidence to satisfy the *Cotton* test and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* at 1281.

In arguing why the ALJ improperly rejected Plaintiff's subjective complaint testimony, Plaintiff does not apply the *Cotton* test. Instead, Plaintiff argues that the test is "absent evidence of malingering, the ALJ cannot reject the claimant's testimony about the severity of the symptoms unless there is a finding of specific, clear and convincing reasons

- 13 -

1 for doing so." Doc. #25 at 15. Defendant also does not apply the *Cotton* test. Instead
2 Defendant argues that the ALJ gave specific, clear and convincing reasons for discounting
3 Plaintiff's credibility. Doc. #26 at 7. This seems to be an argument that both: 1) there was
4 evidence of no-credibility/malingering (which would mean clear and convincing reasons
5 were not required), or 2) even if specific, clear and convincing reasons were required, the
6 ALJ provided such reasons. Thus, for purposes of this Order, the Court will assume that
7 Plaintiff satisfied the two prongs of the *Cotton* test.[5]

### i. Malingering

9 The main finding by the ALJ that relates to malingering is that Plaintiff's recounted
10 daily activities are inconsistent with his description of his alleged disability. Record at 32;
11 *see Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (daily activities such as caring
12 for young children and performing household chores undermined claims of totally disabling
13 pain); *Thomas v. Barnhart*, 278 F.3d 948, 958-59 (9th Cir. 2002) (the ALJ properly
14 considered performing household chores as evidence weighing against plaintiff's credibility
15 on her claim that she was in disabling pain).

16 Here, the consultative report found that Plaintiff did numerous household chores as
17 recounted above. This Court agrees that this evidence in the record supports a conclusion
18 that Plaintiff's symptoms are not as severe has his statements to his doctors. Further, at the
19 hearing the ALJ noted that Plaintiff's testimony focused on sleep disturbances and
20 nightmares, and not pain. Record at 31. For example, in regard to pain, Plaintiff testified
21 that he took naps to reduce pain. Record at 32. However, the ALJ noted that Plaintiff took
22 a nap at a specific time every day, rather then when needed because of pain. *Id.*

---

[5] In his reply, Plaintiff states, "Further, the ALJ found that [Plaintiff] suffers a medically determinable impairment that is reasonably expected to produce the alleged symptoms." This finding, if true, would satisfy the *Cotton* test. Unfortunately, Plaintiff has no citation to support his conclusion that the ALJ made such finding. Regardless, however, for the reasons stated above, the Court has assumed Plaintiff satisfied the *Cotton* test.

1  Thus, the Court finds that there is evidence in the record to support an exaggeration
2  of symptoms sufficient to equate to malingering. As a result, the ALJ was not required to
3  give specific, clear and convincing reasons for not crediting Plaintiff's claims of pain.

### ii. Specific, Clear and Convincing Reasons

Alternatively, if the inconsistencies regarding Plaintiff's pain were insufficient to rise to the level of malingering, this Court finds that the ALJ offered specific, clear and convincing reasons for rejecting Plaintiff's testimony about the severity of his symptoms. First, as recounted above, the ALJ specified how Plaintiff's statements to his doctors about the severity of his limitations were inconsistent with the consultative examiner's report regarding Plaintiff's daily activities and Plaintiff's testimony at the hearing which did not focus on pain beyond sleep disturbances, nightmares and some knee swelling. Record at 31-32.

Second, the ALJ specified that the objective, clinical findings did not support the severity of pain that Plaintiff recounted to his doctors. Record at 31 (ALJ noting that objective, clinical or laboratory evidence of the existence of the conditions or probative evidence of the severity of the symptoms was absent in this record); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding that the ALJ can consider the medical evidence as part of the credibility analysis).

Third, the ALJ specified that ALJ did not find the symptoms, such as decompensation, that Plaintiff claimed to have to be present at the hearing. Record at 31; *see also Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999) (finding the ALJ's personal observations could be considered as part of the credibility analysis).

Thus, alternatively, if the ALJ was required to give specific, clear and convincing reasons for not crediting Plaintiff's subjective complaints about the severity of his symptoms, the Court finds that the reasons articulated by the ALJ and recounted above are specific, clear and convincing reasons for not crediting Plaintiff's subjective complaints about the severity of his symptoms. Therefore, the Court will not reverse the ALJ on this basis.

### C. Develop Record

Finally, Plaintiff argues that even if the Court does not reverse for any other reason, the Court should reverse and remand for further development of the record. Plaintiff argues that the ALJ failed to fully develop the record because the ALJ made statements both discouraging more testimony and limiting further testimony. Doc. #25 at 18. However, Plaintiff makes no argument regarding what additional evidence he sought to introduce that he was precluded from introducing by the ALJ's limitations.

Defendant argues that the ALJ's actions in limiting cross-examination were appropriate given the nature of the questions (Record at 577-82) and the fact that the ALJ has discretion to limit cross examination (citing *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983). Doc. #26 at 8. This Court agrees with Defendant that, given the fact that Plaintiff has not cited any specific additional evidence he sought to put into the record, the ALJ did not abuse her discretion by limiting the cross-examination at the hearing. Therefore, the Court will not reverse for further development of the record.

### III. Conclusion

For the reasons stated above,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #20) is denied;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. #26, attachment 2) is granted, the decision of the ALJ is affirmed and the Clerk of the Court shall enter judgment accordingly (said judgment shall serve as the mandate in this case).

DATED this 5th day of February, 2008.

_____
James A. Teilborg
United States District Judge

- 16 -